072871, Tyrone Brewer Council, if you could approach and let us know who you are and who you represent. Good morning, Your Honors. Assistant State's Attorney Amy Wittroba on behalf of the people. Good morning, Your Honors. Assistant Appellate Defender Jeff Burkhart on behalf of Tyrone Brewer. The usual rules will apply 15 minutes per side. Keep your voices up. This is for recording that amplification. And if we unnecessarily waylay you with a lot of questions, we may give you a little extra time. Okay. May it please the Court. As I said, my name is Jeff Burkhart. I'm an Assistant Appellate Defender. And I represent Tyrone Brewer. Your Honors, this case is here today upon a hearing based on the U.S. Supreme Court's decision in Will Cumming v. New Mexico. In this case, as in Will Cumming, the defendant was denied a Sixth Amendment right to confront one of the witnesses against him. Specifically in this case, the State failed to present Dr. Chira, who is the medical examiner who actually performed the autopsy here. Instead, the State presented Dr. Kogan, who neither performed nor observed the autopsy. Despite that, Dr. Kogan was allowed to essentially read the autopsy report into evidence. The State then admitted the autopsy report into evidence and sent it back to the jury during deliberation. Because that constituted a violation of Mr. Brewer's right to confront one of the witnesses against him, we ask that this Court grant a new trial. Recently, the Illinois Supreme Court decided People v. Leach. Leach resolved two of the three issues that this Court is faced with. First, whether an autopsy report is admitted for the truth of the matter asserted when there's no limiting instruction. And the Leach Court stated in paragraph 67 that, in fact, it is admitted for the truth of the matter asserted. The reason that's important, the Confrontation Clause won't apply unless the statement is actually admitted for the truth of the matter asserted. So Mr. Brewer has already cleared that hurdle. The second question the Leach Court resolved dealt with forfeiture. And the Leach Court basically addressed a very similar question as in this case. And the question was, if the defendant fails to actually object and preserve the issue, can the Reviewing Court actually reach the issue without addressing it as plain error? The Court said that there was no forfeiture in the Leach case because the Confrontation Clause is a fundamental constitutional right. And that was paragraph 62. The final issue before this Court, and the one that Leach addressed but wasn't resolved fully, is whether or not the statement is testimonial. And that's what I would like to address primarily today. In the Leach case, the Court stated in paragraph 122, the autopsy report in the present case was not testimonial. However, the Court emphasized later in paragraph 136, we are not prepared to say that the report of an autopsy conducted by the medical examiner's office can never be testimonial in nature. In fact, the Court went on to say that an autopsy may be testimonial when police either play a direct role, or sorry, police play a direct role and, quote, the purpose of the autopsy is clearly to provide evidence for use in a criminal prosecution. And that's the case here. If you hold Brewer up side-by-side with Leach, there are a number of important differences. First, when you look at Leach, you have a case that's a strangulation. There were no witnesses. It was unclear from the get-go if it was an accident, if it was a suicide, if it was a homicide. In fact, when police were called to the scene in that case, the officers responded not because of a 911 call based on a shooting or a homicide. They responded because the decedent's mother called for a wellness check on her daughter because she hadn't heard from her daughter at that point. So police responded to the scene, saw abrasions, saw lacerations, but it was unclear at that point whether it was an accident, again, a suicide, a homicide. It was uncertain. On the other hand, in this case, when police responded to the scene, it was clear from the outset that this was a homicide. They received a 911 call. They show up at the scene, and they hear eyewitness reports of what started off as a robbery and ended up as a homicide. They received clothing descriptions, descriptions of the actual shooting. And, in fact, the decedent was sitting in his car. It was clear that this wasn't an accident. It was clear that it wasn't a homicide. So there was no reason to think that a medical examiner was truly trying to determine the cause and manner of death in this case. Now, jumping forward to the actual autopsy, the medical examiner in this case, and Leach Court decided this in Paragraph 127, quote, performed the autopsy just as it would have if the police had arranged to transport the body of an accident victim. And, again, in this case, they knew from the outset that it was a homicide. The reason that's important, if you're looking at Leach, this autopsy was, again, performed truly to determine the cause and manner of death, to determine whether it was an accident, a homicide, a suicide. In the incident case, though, it really was to create evidence for use at trial. The medical examiner knew at that point that this was a homicide, and he was doing this with an eye toward trial. Well, how do you know that? We're in the record. Isn't it required that the examiner always conduct this kind of examination? So how can you say that it was purposely for a trial when this is a standard operating procedure? Well, Your Honor, it is standard operating procedure in a sense in that, you know, and I think as you're alluding that, you know, these autopsies are performed for accidents and for suicides and homicides. In some cases, maybe the procedure doesn't vary all that greatly. But for the purpose of the confrontation clause, though, the question is, what is the primary purpose for, you know, basically is the person, the forensic examiner, whether the person is a medical examiner or a person testing the substance, such as cocaine and Melendez-Diaz, or determining blood alcohol level and bullcumming, is the forensic examiner doing this knowing that there will be a trial coming up? And that's exactly what happened in this case. That's true in every case.  So I don't see how that could, in fact, I think Justice Garmon even talks about that and says that doesn't really matter. Well, you know, it is true that, you know, even in Leach, there is a possibility that it's a homicide. That's true. But there wasn't a certainty at all. So, you know, there was an ongoing investigation. They were still determining whether it was an accident. In fact, even in Leach at the time it reached trial, the primary issue in that case was still whether it was an accident. In this case, the primary issue was identity, whether it was Mr. Brewer who fired the weapon, whether it was somebody else, whether he was even on the scene, or if he was on the scene, if he was the shooter or simply an accomplice. But, you know, if you look at the actual autopsy report in this case, attached to the report is a report, it's not a, a police report might not be quite the right word for it, but it is something from the police informing the medical examiner of the circumstances of the shooting in this case. But that's standard operating procedure too. Well, and that's standard operating procedure, but looking at it, it makes it clear that it is a homicide. But, again, they always do autopsies and homicides. Well, they always do autopsies and homicides, but also, I mean, again, if you compare this case with Leach, they do autopsies also in cases where it's unclear. And in Leach it was unclear, unlike this case. And that's the main difference here. Again, the question is, was this done with an eye toward trial? And, you know, in Leach they just, the medical examiner just couldn't have known. Because until the autopsy was actually performed, until they had more evidence, it wasn't clear that it was a homicide. So your rule would be if it's a homicide, it's always for trial? Is that the result that would bear down on that argument? Well, you know, based on what the Leach court decided, that's basically what it comes down to, is if you know from the outset going into it that this is going to be a homicide case, if you know that there's a potential for use in future criminal prosecution, which is the test set forth by Will Cumming and Melendez-Diaz, then, yes, it is testimonial and the Confrontation Clause applies. But, you know, turning to other cases, I mean, you know, we see sorts of cases like Leach fairly often, actually, where, you know, there's a popular case in the news for the past couple of years where initially they thought that the decedent had slipped and fell in the bathtub and it was an accident. The first autopsy determined that it actually was an accident, but a second autopsy determined that it was actually homicide. And, Your Honors, we filed a motion to cite State v. Neverett, the New Mexico Supreme Court case, as additional authority. The reason we cite it, again, we realize that that case is not controlling here, but it demonstrates that when other state Supreme Courts are faced with different facts, they do reach a different result from Leach. And the Leach Court did leave this door open. We don't know, again, we haven't really had many cases dealing with autopsies since Leach, and we don't know how wide the door is open, we don't know what kind of cases this includes, but we know that in cases such as Brewer's case, in cases such as Neverett, where it's clear from the outset that a homicide took place, that this was testimonial, that this was done with an ITOR trial. In fact, the Neverett court, they stated that it was immediately clear that this autopsy was part of a homicide investigation. When that's the case, the statement will be testimonial under the primary purpose test. Well, how do we post and reconcile paragraph 133 of Leach, where the court stated that as a practical matter, because the prosecution for murder may be brought years or even decades after the autopsy was performed, the report prepared, these reports should be deemed testimonial only in the unusual case, in which police plays a direct role, such as arranging for exhumation of a body to reopen a cold case. And the purpose of the autopsy is clearly to provide evidence for use in the prosecution. We have to follow that. Well, you're on that last bit about it clearly being for use in prosecution definitely applies in this case. In terms of it being an unusual, I'm sorry? Well, how is it clearly? I mean, where do you come up with clearly? Well, from here, again, I mean, the first part of this is that they knew from the outset that it was a homicide based on the first responders and based on the actual nature of the offense. In addition to that, even if it wasn't clear at that point, at the time that the autopsy was concluded, this was clear that it was a homicide. And then the cause and manner of death was a homicide and that it was a shooting. And at that point, when the report's actually drafted, and that really is kind of one of the important points in time, at that point it's clear that it is a homicide and that this is being created for use in a future criminal prosecution. Incidentally, right, the primary purpose is to determine cause and manner of death. It's incidental that it may be used in a criminal prosecution. Well, that's, yeah, I mean, if you, it depends on if, I mean, you know, going back to say Melendez-Diaz or Bullcoming, I mean, the immediate purpose for instance in Melendez-Diaz was to determine whether the substance was cocaine or heroin or just some powdery substance or whatever it was. But ultimately it was done with an eye toward trial. The same was true in Bullcoming where you're testing blood alcohol level. In that case they were trying to determine, the immediate thing was to determine whether or not the blood alcohol level was such that there was a violation of a statute. But ultimately the question was would, you know, did the defendant actually violate one of the laws? So it was actually done with an eye toward trial, and that's the same case here. Yeah, in a sense it was to determine whether it was a cause and manner of death, but in a very different sense than in Leach. You know, in Leach it was still unclear, even at the time of trial it was still argued that it was an accident. So there was a question in Leach whether it was actually an accident or a homicide. In this case it was absolutely clear at that point. And going back to your question, Justice Hyman, dealing with, I think it was paragraph 133 in Leach, you know, they do say an unusual case, but again we don't know what that includes. We just know that the facts in this case are quite different from those in Leach. And what the medical examiner knew going into the autopsy in this case is quite different from what the medical examiner knew in Leach. So what's the standard then? Do they think this is probably a homicide? If it's clear and convincing evidence it's a homicide, what would be the standard? Well, Your Honor, going back to, and this goes back to the Crawford decision, you know, the question back in Crawford was, was the statement made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial? Reasonable belief, that's the standard. I'm sorry? Reasonable belief. Well, yeah, I mean that's part of, to reasonably believe, that's correct. That is, that's definitely part of the standard. And that's, I mean, that standard evolves somewhat. I mean, I think we have seven post-Crawford decisions and we, you know, there are a few different ways that the courts approach this. Throughout the course has been basically the primary, the only thing that's consistently been applied is the primary purpose test, which is what we just talked about in terms of Crawford. And that varies, you know, and it is a factual determination. So it isn't something that can be decided very clearly and easily in every case. It does, you know, require a lot of really looking into the facts of each case. But in this case, again, looking at this, this is an autopsy done with an ITOR trial. And therefore, it was testimonial. Your Honors, unless there are any further questions? All right, thank you. And if it's possible, I would like to reserve just a couple of minutes for rebuttal. Sure. Good morning, Your Honors. Again, my name is Amy Watroba and I'm Assistant State's Attorney in Cook County on behalf of the people. Leach controls the outcome of this case. Under Leach, this Court should deny rehearing and issue a modified opinion finding no plain error pursuant to Leach. First, I'd like to just point out that the facts in Leach are exactly the facts here. The only difference being strangulation versus gunshot wound. I direct this Court to paragraph, I believe it's 123 of Leach, which discusses what was in the medical examiner case report in Leach, which specifically said that, included information that this was a suspected homicide and that the defendant's, excuse me, that the victim's husband, defendant, had admitted to choking his wife and was now in custody. So there's no factual defense counsel's attempt to factually distinguish this case from Leach has no merit. Because the medical examiner in Leach was just as aware that this was a potential homicide and in fact that there was a particular suspect as in this case. But even setting that factual similarity aside, the holding in Leach in paragraph 136, I believe, specifically and clearly says that it doesn't matter what the medical examiner knows at the time of the autopsy. After finding that autopsy reports and medical examiner reports are not testimonial under any definition of primary purpose, the Court goes on to say, further, an autopsy report prepared in the normal course of business of a medical examiner's office is not rendered testimonial merely because the assistant medical examiner performing the autopsy is aware that police suspect homicide and that a specific individual might be responsible. So under Leach there's really no wiggle room there. The only open door still under Leach is the one referred to or referenced by Justice Hyman is possibly the unusual situation where you have a body exhumed at the behest of the police for a subsequent autopsy. So that's an issue that would probably be explored in future cases. But beyond that, you have a medical examiner performing an autopsy pursuant to their duty under state law. Their report is non-testimonial. And because the report is non-testimonial, there is no error here. In this case, the claimed error was forfeited. So we are analyzing this under the rubric of plain error. The first step would be to determine if there's error. And there's no error here because it's not testimonial, and that would be the end of the analysis. What's your response to the New Mexico case? I know we don't have to follow it, but just... The New Mexico case is just, Your Honor, that's just another case in the split that's out there. Every state has different statutes defining what the roles of their coroners and medical examiners are. So that's something that has certainly guided, I think, decisions in different states. In some states, the coroner or medical examiner is more closely tied with law enforcement than here. That could be part of it. And then there's also just disagreement. And notably, the Leach Court, in paragraphs 133 and 134, acknowledged that split. So the Leach Court was aware that there's a difference of opinion out there, but has declared that the law in Illinois is that medical examiner reports are not testimonial, except under those unusual circumstances. I think that I would also just point out that the defendant's argument regarding, again, that somehow the court should look to whether it's absolutely clear that it's a homicide at the time the medical examiner conducts the examination, not only is contrary to the holding in Leach, but it makes no difference if it's a gunshot wound or a strangulation. Just because, just as in Leach, it was death by strangulation, and the defendant claimed that it was an accident, in a gunshot wound case, you could have a defendant claim that he was acting in self-defense. So I would say that that's really no different. And that, I think, points out one of the problems in the defendant's argument and probably guided the Leach Court's decision. So unless there are any other questions, I would just argue that Leach controls and the court should affirm the defendant's conviction. Thank you. Your Honor, just briefly, the question is to New Mexico Supreme Court's decision. This isn't something that varies state by state. This is the Confrontation Clause, this is the Sixth Amendment, and this isn't something that, although courts have come out in different directions, a lot of that has to do with factual differences in those cases. Ultimately, and the Leach Court recognizes this, the U.S. Supreme Court will likely take up an autopsy Confrontation Clause case. But in the meantime, we have to do the best with what we have. And with Leach, it's clear that there are factual distinctions. We see that, again, with Paragraph 133. Going back to Leach v. Brewer, this isn't simply the difference between a strangulation and a shooting. We have a strangulation where there were no witnesses, a strangulation where they didn't know if it was an accident or a homicide or a suicide, and, again, that was still the issue at trial, whether it was an accident or a homicide. Conversely, in this case, we have something that, again, it was clear from the outset that this was a homicide. As soon as police responded to the scene, they had witnesses describing the shooters, they had witnesses describing the robbery. Again, the fact that it was a robbery, a started-office robbery, makes it clear that this was not an accident, was not a suicide. And lastly, again, the Leach court did address forfeiture and did note in, I believe it was Paragraph 62, the Confrontation Clause is a fundamental constitutional right. Therefore, on that basis, they reviewed the issue. In addition to that, if this court decides, though, that it would like to address this issue as plain error, plain error did occur here. This issue, it was closely balanced in terms of who personally discharged the firearm in this case, and the briefs discussed that at length. Unless there are any further questions? Thank you, Your Honors. Okay. We are adjourned. We'll take it under advisement. Thanks for the briefs and the arguments and the multiple attempts to alert this court to additional authority, which this case may have set a record for. We'd better get the opinion out quickly, as a matter of fact, otherwise there might be more to consider. Thank you.